IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| v. | : CRIMINAL CASE NO.: |
| ARTHUR MCKEEVER GUTHRIE | : 1:15-CR-00280-RWS-JSA |

**FINAL REPORT AND RECOMMENDATION**

Defendant was arrested by Atlanta Police Department officers during an undercover drug transaction. Believing that he may have also committed a robbery that had just occurred in the same area, the officers also presented him to the robbery victim for identification. The victim identified Defendant as the robber. The Defendant is not charged with committing the robbery in this case, but the Government may seek to introduce testimony from the robbery victim or otherwise as to the robbery identification at trial. The case is now before the Court on Defendant's Motion to Suppress the Identification [21]. For reasons explained below, the Motion should be **DENIED**.[1]

---

[1] Defendant also initially filed a Motion to Suppress Evidence [22], relating to evidence obtained during Defendant's arrest. Def. Br. [41] at n. 1. Defendant indicates that in light of the testimony adduced at the evidentiary hearing, he is declining to submit a post-hearing brief arguing in favor of suppression. The Court agrees that evidence establishes probable cause for the arrest and that the evidence was properly obtained during that arrest. Thus, both on the merits, and because

## FACTS

The following facts were adduced in the evidentiary hearing held on April 11, 2016 and continued on April 22, 2016. The transcript of the hearing has been filed on the docket in two volumes [35] [36], but the pagination of these filings reflects one continuous transcript. Thus, the Court will simply refer to the testimony as "Tr. at __."

APD Officers Freeman and Groesser were working undercover on around Tanner and Hilliard streets in Atlanta after midnight on December 13, 2014. Tr. at 3-6, 23. They made an undercover purchase of narcotics from the Defendant. *Id.* at 7-13. Defendant briefly fled as the "takedown" team approached, but after a chase he was arrested shortly afterwards in a local bar. *Id.* at 11-12. According to Freeman, the Defendant discarded a variety of items, including a gun, as he fled. *Id.*

Meanwhile, shortly before the takedown team approached to arrest Defendant, Freeman was advised that the Defendant "matched the description of a robbery [suspect] that had just occurred." *Id.* at 9. At the evidentiary hearing, however, Officer Freeman could not recall that description other than that the suspect was wearing a dark leather jacket. *Id.* at 7, 13.

---

Defendant abandons the argument, the Court recommends that the Motion to Suppress Evidence [22] be **DENIED** as well.

After the officers arrested Defendant at the bar, other officers drove the robbery victim by the scene where Defendant was being detained. *Id.* at 46-48. The Government cites APD radio records that were admitted into evidence to show that the show-up likely occurred approximately 45 minutes after the victim reported the robbery. *See* Gov't Br. [45] (citing Ex. 1).[2] APD Sergeant Taddei was driving the car in which the victim was a passenger. *Id.* He told the victim, that "they had somebody stopped that may be the person," *id.* at 52, and that "we would drive past the person that we had detained, and we just needed her to identify if that was the person." *Id.* at 49. Taddei further told the victim, "do not identify him if you're not sure. If you're not sure, just say you're not sure, and if you are sure, just let us know." *Id.* As they drove past where officers were detaining Defendant, Taddei activated his "alley lights," which illuminated the scene. *Id*. The victim then identified Defendant. *Id.*

## DISCUSSION

In *Simmons v. United States*, 390 U.S. 377, 384 (1968), the Supreme Court explained that to challenge the constitutionality of identification procedures

---

[2] The Government's inferences from these radio records are not disputed by the Defendant in his reply brief. This time frame is also consistent with the memory of the officer who testified, who stated that he "would believe" that less than an hour had passed between the report of the robbery and the victim's identification, although the officer acknowledged "I couldn't really put a great time frame on it," and "radio transmissions would be able to articulate that better, more accurately." Tr. at 44.

successfully, the defendant must show them to be "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." This standard is applied in a two-part test: (1) whether the identification procedures were unduly suggestive, and, if so, (2) whether, under the totality of the circumstances, the identification was reliable. *See Blanco v. Singletary*, 943 F.2d 1477, 1508 (11th Cir. 1991); *see also Neil v. Biggers*, 409 U.S. 188, 198-200 (1972). This test applies equally to in-court and out-of-court identifications. *Jones v. Kemp*, 794 F.2d 1536, 1539 (11th Cir. 1986).

If the identification process is determined not to be unduly suggestive, there is no need to proceed to the second part of the analysis and the inquiry ends. *Cikora v. Dugger*, 840 F.2d 893, 895 (11th Cir. 1988). If, on the other hand, the process is determined to be unduly suggestive, a court must look at the totality of circumstances surrounding the identification, including: the opportunity of the witness to view the perpetrator at the time of the crime, the witness's degree of attention, the accuracy of a prior description, the level of certainty of the witness, and the length of time elapsing between the crime and the identification. *Biggers*, 409 U.S. at 199; *see also Manson v. Brathwaite*, 432 U.S. 98, 114 (1977); *Blanco*, 943 F.2d at 508; *United States v. Cannington*, 729 F.2d 702, 711 (11th Cir. 1984). These factors must be weighed against the corrupting effect of the suggestive identification itself. *Manson*, 432 U.S. at 114.

On the one hand, single-person show-ups, such as utilized in this case, are "widely condemned." *Johnson v. Dugger*, 817 F. 2d 726, 729 (11th Cir. 1987) *(citing Frank v. Blackburn*, 605 F. 2d 910, 912 (5th Cir. 1979)). On the other hand, when done immediately at the scene of a crime, such a procedure may uniquely "allow identification before the suspect has altered his appearance and while the witness' memory is fresh and permit the quick release of innocent persons." *Id.*[3] Thus, the Eleventh Circuit has made clear that "show-ups are not unnecessarily suggestive unless the police aggravate the suggestiveness of the confrontation." *Id.*

In this case, the Government only argues as to the first prong of the *Biggers* analysis, that is, that the show-up in which the alleged robbery victim identified Defendant was not unduly suggestive. The Government offers no argument as to the second prong, that is, that even if the procedure was unduly suggestive, the totality of the circumstances shows that the identification was reliable.

The Court agrees with the Government that the show-up in this case was not unduly suggestive and should not be suppressed. While show ups are not generally favored, this case presents the quintessential circumstance for how a show up can

---

[3] By contrast, courts often find the display of a single photograph to a witness several days after he or she witnessed a crime to be unnecessarily and unduly suggestive. *See*, *e.g., Manson v. Brathwaite*, 432 U.S. 98 (1977). Such a procedure has the inherent suggestiveness of a single-suspect identification but without the necessity and freshness of an immediate on-the-scene show up.

nevertheless be proper.  Employing a show up in this case allowed for the officers to see if the alleged victim could recognize the Defendant within just 45 minutes or so of the event itself.  A proper lineup with multiple individuals of roughly the same general characteristics would have undoubtedly taken much longer to arrange, thus risking a degradation in the witness's recollection.  Thus, while not ideal in that this procedure only presented one option to the witness, it served an important function in allowing a much faster and therefore generally more reliable opportunity for the witness to observe and react.

At the same time, the police did not aggravate the inherent suggestiveness of the procedure.  Sergeant Taddei told the witness, "do not identify him if you're not sure.  If you're not sure, just say you're not sure, and if you are sure, just let us know."  Tr. at 49.  While Sergeant Taddei informed the witness that the police detained someone that "may" be the right person, he did not otherwise reveal any evidence or suggest that he was in fact the right person.

The Court assumes that it was obvious to the witness that the Defendant was being detained.  But this in itself is not unduly suggestive.  As far as the witness knew, Defendant could have been briefly detained for investigative purposes just to allow an opportunity for a identification, or could have been arrested or detained for other reasons.  In any event, that the Defendant was detained would not unnecessarily suggest that the police had evidence independent of the witness's

prior description to believe that the Defendant was the robber. *See United States v. Bautista*, 23 F.3d 726, 730 (2d Cir. 1994) (denying suppression because "handcuffs, custody, and flashlights [are] all necessary incidents of an on-the-scene identification immediately following a night-time narcotics raid."); *United States v. Moulton*, 2011 WL 902639, *5-7 (N.D. Ga. 2011) (Shoob, J.) (Show up procedure was not unduly suggestive where defendant was presented while handcuffed, between two police officers, with a police car spotlight).[4]  Indeed, Taddei denied that he even described Defendant as a "suspect" to the witness. *Id.* at 52.

## CONCLUSION

Thus, Defendant's Motions to Suppress Identification [21] and Evidence [22] should be **DENIED**.  Defendant's pending Motion to Suppress Statements [16] is **DEFERRED** to the District Judge.

---

[4] The Government also cites the Supreme Court's more decision in *Perry v. New Hampshire*, __ U.S. __, 132 S.Ct. 716 (2012), but that case is less illuminating on the facts here.  *Perry* stands for the proposition that the remedy of suppression is available only where the police employ unduly suggestive procedures, not where circumstances unrelated to police conduct might detract from the reliability of an identification.  *Id.*  Here, the circumstances that Defendant argues render this identification suggestive were all the result of police conduct, and therefore *Perry* is of little assistance to the Government.

This case is **READY FOR TRIAL**.

**IT IS SO RECOMMENDED** this 15th day of August, 2016.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE